[No. C012131. Third Dist. July 31, 1992.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
KENNETH DERRELL WILLIAMS, Real Party in Interest.

690

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Michael J. Weinberger and Thomas Y. Shigemoto, Deputy Attorneys General, for Petitioner.

Timothy E. Ainsworth for Respondent.

Michael K. Brady and Loretta H. Hellen for Real Party in Interest.

Jessie Morris, Jr., and Charles M. Bonneau as Amici Curiae on behalf of Real Party in Interest.

## OPINION

PUGLIA, P. J.—The People seek a writ of prohibition restraining respondent Sacramento Superior Court from proceeding with trial of a criminal action before the Honorable James L. Long, and a writ of mandate directing respondent court to vacate its order disallowing a peremptory challenge to Judge Long and to issue an order allowing the challenge. We shall grant the People the relief they seek.

A Placer Superior Court jury convicted real party in interest (defendant) of murder (Pen. Code, § 187), rape (Pen. Code, § 261, subd. (3)), robbery (Pen. Code, § 211), kidnapping (Pen. Code, § 207), kidnapping for purposes of robbery (Pen. Code, § 209) and burglary (Pen. Code, § 459); the jury found as a special circumstance that defendant committed the murder in the course of other offenses (Pen. Code, § 190.2, subd. (a)(17)) and was armed with and personally used a firearm in the commission of some of the offenses (Pen. Code, §§ 12022, 12022.5). (*People* v. *Williams* (1989) 48 Cal.3d 1112, 1117 [259 Cal.Rptr. 473, 774 P.2d 146].) The jury fixed the penalty at death. (*Id.* at p. 1117.) On automatic appeal (Pen. Code, § 1239, subd. (b)), the Supreme Court reversed the judgment on the ground "the trial court erred prejudicially in denying defendant's motion for change of venue." (48 Cal.3d, *supra*, at pp. 1118, 1131-1132, 1139.)

On remand, venue was changed to Sacramento County where the matter was set for retrial in respondent superior court. After jury selection commenced, a mistrial was declared after the trial court determined the prosecutor used peremptory challenges to remove prospective jurors solely on the basis of group bias. (Cf. *Batson* v. *Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712]; *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].) In due course, trial again commenced but a second mistrial was declared due to the inability of defendant's counsel to continue. New counsel was appointed to represent defendant, and the presiding judge, the Honorable James T. Ford, assigned the matter to Judge Long for jury trial.

On October 17, 1991, the People filed with Judge Ford a written motion and declaration to disqualify Judge Long peremptorily pursuant to Code of Civil Procedure section 170.6 (hereafter section 170.6). Defendant objected, noting that Judge Long is a Black male and asserting that the challenge was based on group bias and thus was not "legitimate." After being advised that a prior mistrial was predicated upon a finding that the prosecution exercised peremptory challenges to exclude Black females from the jury, Judge Ford directed the prosecution to disclose its reasons for seeking peremptorily to disqualify Judge Long. The prosecution did so but Judge Ford concluded that the prosecution failed to state articulable facts overcoming a prima facie showing of invidious discrimination. Accordingly, Judge Ford found that the People's exercise of the section 170.6 challenge was not made in good faith and disallowed the peremptory challenge. Trial was set to commence before Judge Long on October 25, 1991.

On October 21, 1991, the People timely filed the instant petition seeking extraordinary relief, "the exclusive means of appellate review of an unsuccessful peremptory challenge motion." (*People* v. *Hull* (1991) 1 Cal.4th 266, 276 [2 Cal.Rptr.2d 526, 820 P.2d 1036]; accord, *People* v. *Broxson* (1991) 228 Cal.App.3d 977, 979 [278 Cal.Rptr. 917]; *Guedalia* v. *Superior Court* (1989) 211 Cal.App.3d 1156, 1163 [260 Cal.Rptr. 99].) On October 22, 1991, we stayed trial of the underlying proceeding pending receipt of opposition and further order of this court, and we advised the parties that we were considering issuing a peremptory writ in the first instance and that any opposition to the petition was to be filed on or before November 6, 1991. Respondent court and defendant timely filed opposition. With leave of court, an amicus curiae brief in support of defendant was filed on November 6, 1991. Pursuant to our direction, the People thereafter filed a supplemental brief addressing specified issues, and briefs of respondent superior court and defendant responding thereto were filed on May 4, 1992.

A brief statutory history will provide context and perspective. In 1937, the Legislature enacted the predecessor to section 170.6, Code of Civil Procedure former section 170.5, which provided for disqualification of a trial

judge upon filing of a peremptory challenge in writing. (See Stats. 1937, ch. 507, § 1, p. 1496; repealed by Stats. 1959, ch. 1099, § 1, p. 3172.) That statute was "promptly and unanimously ruled an unwarranted and unlawful interference with the constitutional powers and duties of the trial courts." (*Autoland, Inc.* v. *Superior Court* (1988) 205 Cal.App.3d 857, 861 [252 Cal.Rptr. 662], citing *Austin* v. *Lambert* (1938) 11 Cal.2d 73 [77 P.2d 849, 115 A.L.R. 849]; see also *Daigh* v. *Shaffer* (1937) 23 Cal.App.2d 449 [73 P.2d 927].) In *Austin*, the Supreme Court distinguished peremptory challenge statutes operating in other jurisdictions on the ground "that without exception [those statutes] provide for some showing of disqualification by *affidavit*" and at least require "that the charge of bias or prejudice [be] under oath[,]" whereas former section 170.5 authorized disqualification with "[n]o more . . . than the arbitrary and undisclosed reason and purpose of the litigant or his attorney." (*Austin* v. *Lambert*, *supra*, 11 Cal.2d at p. 76, italics original.)

Some 20 years later, "the Legislature resuscitated the peremptory challenge in its present form, adopting the requirement of a boilerplate affidavit . . . ." (*Autoland, Inc.* v. *Superior Court*, *supra*, 205 Cal.App.3d at p. 861.) Rejecting challenges to the new statute, the Supreme Court found section 170.6 constitutional, concluding "[t]he Legislature . . . acted within its power to adopt reasonable regulations when it provided that, for the limited purposes of [the statute], prejudice may be established by the filing of an affidavit sworn to by a party or his attorney, without judicial determination of the existence of the fact." (*Johnson* v. *Superior Court* (1958) 50 Cal.2d 693, 697 [329 P.2d 5].)

As originally enacted in 1957, section 170.6 provided in pertinent part: "No judge of any superior . . . court of the State of California shall try any civil action or special proceeding of any kind or character nor hear any matter therein which involves a contested issue of law or fact when it shall be established as hereinafter provided that such judge is prejudiced against any party or attorney or the interest of any party or attorney appearing in such action or proceeding. [¶] Any party to or any attorney appearing in any such action or proceeding may establish such prejudice by an oral or written motion without notice supported by affidavit that the judge before whom such action or proceeding is pending or to whom it is assigned is prejudiced against any such party or attorney or the interest of such party or attorney so that such party or attorney cannot or believes that he cannot have a fair and impartial trial or hearing before such judge. . . . [¶] If such motion is duly presented and such affidavit is duly filed, thereupon and without any further act or proof, the judge supervising the master calendar, if any, shall assign some other judge to try the cause or hear the matter. In other cases, the

trial of the cause or the hearing of the matter shall be assigned or transferred to another judge of the court in which the trial or matter is pending or, if there is no other judge of the court in which the trial or matter is pending, the chairman of the judicial council shall assign some other judge to try the cause or hear such matter as promptly as possible. Under no circumstances shall a party or attorney be permitted to make more than one such motion in any one action or special proceeding pursuant to this section . . . ." (Stats. 1957, ch. 1055, § 1 pp. 2288-2289.)

Only one of several amendments to the 1957 statute is relevant to the issues tendered by this proceeding: "As originally enacted . . . , section 170.6 was limited to civil cases (Stats. 1957, ch. 1055, p. 2288); in 1959 it was amended to apply to criminal cases as well (Stats. 1959, ch. 640, p. 2620)." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 201, fn. 20 [137 Cal.Rptr. 460, 561 P.2d 1148]; accord, *McClenny* v. *Superior Court* (1964) 60 Cal.2d 677, 685 [36 Cal.Rptr. 459, 388 P.2d 691] ["[S]ection 170.6 draws no distinction between civil and criminal actions. [Fn. omitted.]"]; *People* v. *Cook* (1989) 209 Cal.App.3d 404, 407 [257 Cal.Rptr. 226].) Hence, a prosecutor is now authorized to exercise peremptory challenges on behalf of the People. (See *People* v. *Superior Court (Tony S.)* (1975) 44 Cal.App.3d 904, 907-909 [119 Cal.Rptr. 125]; *People* v. *Gonzales* (1965) 235 Cal.App.2d Supp. 887, 891 [46 Cal.Rptr. 301].) Subsequent to the 1959 amendment, the Supreme Court reiterated its determination that section 170.6 was constitutional, "remain[ing] a reasonable—and hence valid—accommodation of competing interests of bench, bar, and public on the subject of judicial disqualification." (*Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 204.)

"The right conferred by . . . section 170.6 . . . is a substantial right which is now part of the system of due process and judicial fair play in this state." (*McCauley* v. *Superior Court* (1961) 190 Cal.App.2d 562, 564 [12 Cal.Rptr. 119].) "The purpose of the disqualification statute is . . . to promote fair and impartial trials . . . ." (*International Union of Operating Engineers* v. *Superior Court* (1989) 207 Cal.App.3d 340, 349 [254 Cal.Rptr. 782].) As stated by the Supreme Court, " '[i]n order to insure confidence in the judiciary and avoid the suspicion which might arise from the belief of a litigant that the judge is biased in a case where it may be difficult or impossible for the litigant to persuade a court that his belief is justified, the Legislature could reasonably conclude that a party should have an opportunity to obtain the disqualification of a judge for prejudice, upon a sworn statement, without being required to establish it as a fact to the satisfaction of a judicial body.' " (*Solberg* v. *Superior Court, supra,* 19 Cal.3d at pp. 192-193, quoting *Johnson* v. *Superior Court, supra,* 50 Cal.2d at p. 697.) As a remedial statute, section 170.6 is to be liberally construed and " 'the

modern trend of decisions [is] in favor of granting relief unless absolutely forbidden by statute [citations].' [Citation.]" (*Woodman* v. *Superior Court* (1987) 196 Cal.App.3d 407, 414 [241 Cal.Rptr. 818], disappoved on other grounds in *People* v. *Hull, supra,* 1 Cal.4th at pp. 269-276; accord, *Le Louis* v. *Superior Court* (1989) 209 Cal.App.3d 669, 683 [257 Cal.Rptr. 458] ["[S]ection 170.6 should be liberally construed with a view to effect its objectives and to promote justice."]; *Lyons* v. *Superior Court* (1977) 73 Cal.App.3d 625, 627, fn. 1 [140 Cal.Rptr. 826]; *Woodman* v. *Selvage* (1968) 263 Cal.App.2d 390, 395 [69 Cal.Rptr. 687]; *Fairfield* v. *Superior Court* (1963) 216 Cal.App.2d 438, 444 [31 Cal.Rptr. 3]; *People* v. *Smith* (1961) 196 Cal.App.2d 854, 859 [17 Cal.Rptr. 330]; *Eagle Maintenance & Supply Co.* v. *Superior Court* (1961) 196 Cal.App.2d 692, 695 [16 Cal.Rptr. 745].)

Accordingly, courts have long "recognized that in enacting . . . section 170.6 the Legislature guaranteed to litigants an extraordinary right to disqualify a judge. The right is 'automatic' in the sense that a good faith *belief* in prejudice is alone sufficient, proof of facts showing actual prejudice not being required." (*McCartney* v. *Commission on Judicial Qualifications* (1974) 12 Cal.3d 512, 531 [116 Cal.Rptr. 260, 526 P.2d 268], disapproved on another point in *Spruance* v. *Commission on Judicial Qualifications* (1975) 13 Cal.3d 778, 799, fn. 18 [119 Cal.Rptr. 841, 532 P.2d 1209], citing *Pappa* v. *Superior Court* (1960) 54 Cal.2d 350, 353 [5 Cal.Rptr. 703, 353 P.2d 311], italics original; *Mayr* v. *Superior Court* (1964) 228 Cal.App.2d 60, 63 [39 Cal.Rptr. 240], quoted in *Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 789 [171 Cal.Rptr. 590, 623 P.2d 151]; *Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 193; *Kaiser Foundation Hospitals* v. *Superior Court* (1987) 190 Cal.App.3d 721, 724 [235 Cal.Rptr. 630]; *Los Angeles County Dept. of Pub. Social Services* v. *Superior Court* (1977) 69 Cal.App.3d 407, 411-412 [138 Cal.Rptr. 43], cited in *Le Louis* v. *Superior Court, supra,* 209 Cal.App.3d at p. 676; *People* v. *Bonds* (1988) 200 Cal.App.3d 1018, 1021 [248 Cal.Rptr. 5].)

We recognize that "[s]uch a right is not absolute and unlimited. Inherent in its exercise is the requirement of conformance to certain reasonable procedures invoked for the benefit of . . . all . . . litigants." (*People* v. *Jackson* (1960) 186 Cal.App.2d 307, 317 [8 Cal.Rptr. 849]; see also *People* v. *Genser* (1967) 250 Cal.App.2d 351, 363 [58 Cal.Rptr. 290].) As "[o]ur Supreme Court has remarked, apparently approvingly, . . . 'the courts of this state have been vigilant to enforce the statutory restrictions on the number and timing of motions permitted.' " (*Thomas Realty Co.* v. *Superior Court* (1988) 199 Cal.App.3d 91, 96 [244 Cal.Rptr. 733], quoting *Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 197.)

■ In the underlying case, the People fully adhered to the procedural requisites by timely filing the section 170.6 peremptory challenge on the day

of assignment of the case to Judge Long, and by submitting a declaration in support of the challenge which substantially complied with the form mandated by subdivision (5) of section 170.6. The peremptory challenge was thus timely and in proper form, and recusal of Judge Long was mandatory. (See, e.g., *Andrews* v. *Agricultural Labor Relations Bd.*, *supra*, 28 Cal.3d at p. 789; *McCartney* v. *Commission on Judicial Qualifications*, *supra*, 12 Cal.3d at p. 532; *Pappa* v. *Superior Court*, *supra*, 54 Cal.2d at p. 350; *Le Louis* v. *Superior Court*, *supra*, 209 Cal.App.3d at p. 676; *People* v. *Bonds*, *supra*, 200 Cal.App.3d at p. 1021; *Bambula* v. *Superior Court* (1985) 174 Cal.App.3d 653, 658 [220 Cal.Rptr. 223]; *Brown* v. *Swickard* (1985) 163 Cal.App.3d 820, 824 [209 Cal.Rptr. 844]; *In re Robert P.* (1981) 121 Cal.App.3d 36, 41 [175 Cal.Rptr. 252]; *People* v. *Montalvo* (1981) 117 Cal.App.3d 790, 796 [173 Cal.Rptr. 51]; *People* v. *Hall* (1978) 86 Cal.App.3d 753, 756 [150 Cal.Rptr. 412]; *In re Jose S.* (1978) 78 Cal.App.3d 619, 625 [144 Cal.Rptr. 309].)

Rather than accepting the disqualification of Judge Long, Judge Ford proceeded to inquire into the good faith of the prosecutor's exercise of the peremptory challenge. However, "[p]rejudice is 'established' when an oral or written affidavit is timely filed by a party or an attorney declaring in 'substantially' the words of the statute, that the party or attorney 'cannot or believes that he cannot have a fair and impartial trial or hearing before such judge . . . .'" (*People* v. *Wilks* (1978) 21 Cal.3d 460, 466 [146 Cal.Rptr. 364, 578 P.2d 1369], fn. omitted, quoting § 170.6, subds. (2), (5) and (6).) We reiterate: "[G]ood faith *belief* in prejudice is alone sufficient, proof of facts showing actual prejudice not being required." (*McCartney* v. *Commission on Judicial Qualifications*, *supra*, 12 Cal.3d at p. 531, quoted in, inter alia, *Andrews* v. *Agricultural Labor Relations Bd.*, *supra*, 28 Cal.3d at p. 789, italics original; *Solberg* v. *Superior Court*, *supra*, 19 Cal.3d at p. 193.) Stated otherwise, "[t]he law assumes that a party who disqualifies a judge by a motion under section 170.6 does so in good faith" (*Brown* v. *Superior Court* (1981) 124 Cal.App.3d 1059, 1061 [177 Cal.Rptr. 756]), and "[t]he liberal provisions of section 170.6 give a litigant one chance to get rid of an unwanted judge, whom he cannot successfully challenge [for cause] under [Code of Civil Procedure] section 170" (*Loftin* v. *Superior Court* (1 971) 19 Cal.App.3d 577, 579 [97 Cal.Rptr. 215]). The statute "affords a party the opportunity to file a 'no questions asked' peremptory challenge of a judge" (*California Fed. Sav. & Loan Assn.* v. *Superior Court* (1987) 189 Cal.App.3d 267, 271 [234 Cal.Rptr. 413]). Consequently, since the declaration was timely filed and in proper form, Judge Ford "was bound to accept [it] without further inquiry." (*McCartney* v. *Commission on Judicial Qualifications*, *supra*, 12 Cal.3d at p. 532; cf. *People* v. *Hull*, *supra*, 1 Cal.4th at p. 278, dis. opn. of Kennard, J.; ["[T]he allegation of bias in a peremptory

challenge may not be contested and removal is automatic upon filing of an affidavit of prejudice."].)

Respondent superior court contends that limitations on inquiry into the good faith of a peremptory challenge are subject to an exception where a statute is used for "an unconstitutional purpose," citing *People* ex rel. *Baricevic* v. *Wharton* 136 Ill.2d 423 [556 N.E.2d 253]. Illinois enacted a statute similar to section 170.6, permitting prosecutors to move for automatic substitution of a judge upon an allegation of prejudice. (Ill. Code of Crim. Proc., § 114-5(c).) In *People* ex rel. *Baricevic*, the Illinois Supreme Court determined that the constitutional doctrine of separation of powers barred use of that statute for the purpose of thwarting a chief justice's independence in the assignment of cases to judges in his circuit, and thus enunciated an exception to the general prohibition against judicial inquiry into the truthfulness of the prosecutor's allegations of prejudice. (*People* ex rel. *Baricevic* v. *Wharton*, *supra*, 556 N.E.2d at pp. 258-259.)

In arguing that the analysis and holding of *People* ex rel. *Baricevic* should be applied to section 170.6, respondent superior court fails to acknowledge two major impediments to application of Illinois law. First, there exists a fundamental distinction in the statutory schemes of the two states. The Illinois statute requires only an *allegation* of prejudice; section 170.6 requires an affidavit or declaration of prejudice. "The oath or verification requirement in section 170.6 is more than a 'hollow formality'; it is an essential part of the statutory scheme of safeguards bearing upon the constitutionality of the disqualification statute." (*People* v. *St. Andrew* (1980) 101 Cal.App.3d 450, 456 [161 Cal.Rptr. 634], citing *Solberg* v. *Superior Court*, *supra*, 19 Cal.3d at p. 197.) Second, and more importantly, *People* ex rel. *Baricevic* was a response to the practice of "blanket challenges"[1] (*People* ex rel. *Baricevic* v. *Wharton*, *supra*, 556 N.E.2d at pp. 257-258), and, despite having articulated its disapproval of the practice, our Supreme Court has held that section 170.6 is not "vitiate[d]" by the practice of blanket challenges and that section 170.6 affidavits must "be honored notwithstanding [such] misuse" (*Solberg* v. *Superior Court*, *supra*, 19 Cal.3d at pp. 203-204).

Reliance on *State* v. *Weiss* (1967) 250 Ore. 252 [430 P.2d 357], cited by amicus curiae, is similarly unavailing. Although Oregon's statutory scheme

---

[1] A blanket challenge "occurs when as a matter of office policy a district attorney or a public defender instructs his deputies to disqualify a certain disfavored judge in all criminal cases of a particular nature—such as those involving prostitution or illegal narcotics—or in all criminal cases to which he is assigned. The former will prevent the judge from hearing any cases of that type, while the latter policy will force his removal from the criminal bench and his reassignment to a civil department." (*Solberg* v. *Superior Court*, *supra*, 19 Cal.3d at p. 202, fn. omitted.)

is nearly identical to section 170.6, the Oregon Supreme Court has construed its statute to permit judicial inquiry into the question of whether the peremptory challenge was in fact made in good faith. (*State* v. *Weiss*, *supra*, 430 P.2d at p. 360; cf. *State* ex rel. *Ray Wells, Inc.* v. *Hargreaves* (1988) 306 Ore. 610 [761 P.2d 1306].) Our Supreme Court has specifically refused to adopt a similar "judicial revision of section 170.6." (*Solberg* v. *Superior Court*, *supra*, 19 Cal.3d at pp. 200-201.)

Defendant contends the proscription on inquiry into motives prompting exercise of a peremptory challenge has been at least partially abrogated by adoption of section 1 of the Standards of Judicial Administration recommended by the Judicial Council, which provides in pertinent part: "To preserve the integrity and impartiality of the judicial system, each judge should: [¶] (1) . . . Ensure that courtroom proceedings are conducted in a manner that is fair and impartial to all of the participants; [¶] (2) . . . In all judicial proceedings, refrain from engaging in conduct and prohibit others from engaging in conduct that exhibits gender or other bias, whether that bias is directed toward counsel, court personnel, witnesses, parties, jurors, or any other participants . . . ." Defendant's effort to transmute recommended standards into positive law totally overlooks the fact that such standards, insofar as they may conflict with section 170.6, would be "invalid since the Judicial Council may only make rules which are not inconsistent with statute." (*Wilburn* v. *Oakland Hospital* (1989) 213 Cal.App.3d 1107, 1110 [262 Cal.Rptr. 155], citing *Sadler* v. *Turner* (1986) 186 Cal.App.3d 245, 249 [230 Cal.Rptr. 561].)

Nor do we agree with the proposition advanced by defendant and respondent court that the previously discussed decisions interpreting and applying section 170.6 have been overruled or limited by more recent decisions prohibiting the exercise of peremptory challenges to prospective jurors for group bias.

As recently summarized by the California Supreme Court: "The principles first articulated in [*People* v. *Wheeler*, *supra*, 22 Cal.3d 258] are now well settled. [Citations.] ■ A party may not use peremptory challenges to remove prospective jurors solely on the basis of group bias. Group bias is a presumption that jurors are biased merely because they are members of an identifiable group distinguished on racial, ethnic, or similar grounds. [Citation.] In *Batson* v. Kentucky [, *supra*, 476 U.S. 79], the United States Supreme Court held that peremptory challenges based solely on race also violated the equal protection clause when the defendant is a member of the race being challenged. . . . [T]he high court has recently extended the Batson holding and given a defendant, regardless of race, standing to object

to the racially discriminatory use of peremptory challenges. (*Powers* v. *Ohio* (1991) 499 U.S. __ [113 L.Ed.2d 411, 111 S.Ct. 1364].) Under *Wheeler*, of course, which is based on the right to trial by a representative jury, a defendant need not be a member of the group to challenge its exclusion. [Citation.]" (*People* v. *Fuentes* (1991) 54 Cal.3d 707, 713-714 [286 Cal.Rptr. 792, 818 P.2d 75], fn. omitted.)

"To implement these holdings, both [the federal and state high] courts adopted a like procedure. A defendant alleging an unconstitutional exclusion of some group from the jury must first make a prima facie showing of such exclusion. This is most often done by establishing a pattern of strikes eliminating most or all members of the group. [Citations.] Other factors to be considered include the nature of the questioning by the prosecutor, the racial or ethnic background of the defendant and the victim, and the similarity of the challenged jurors based on characteristics other than group membership. [Citations.] Once a prima facie case has been established, the burden shifts to the prosecution to demonstrate a neutral explanation for the challenge. [Citation.]" (*People* v. *Christopher* (1991) 1 Cal.App.4th 666, 670 [2 Cal.Rptr.2d 69], fn. omitted.) Finally, the trial court must determine whether defendant has carried his burden of proving purposeful discrimination. (*Hernandez* v. *New York* (1991) 500 U.S. __ [114 L.Ed.2d 395, 405, 111 S.Ct. 1859], citing *Batson* v. *Kentucky, supra,* 476 U.S. 79 [90 L.Ed.2d at pp. 88-89]; see *People* v. *Turner* (1986) 42 Cal.3d 711, 717 [230 Cal.Rptr. 656, 726 P.2d 102] [federal and state procedures are essentially identical].)

In setting aside the People's peremptory challenge, Judge Ford resorted to procedures developed to implement "*Batson/Wheeler*": finding that defendant had made a prima facie case of unconstitutional challenge to Judge Long; placing on the prosecutor the burden to provide a neutral explanation for the peremptory challenge; and disallowing the peremptory challenge upon a determination that the prosecutor had not overcome the prima facie showing of unconstitutionality. As discussed hereafter in detail, Judge Ford failed to address the ultimate issue, i.e., whether defendant met his burden of proving purposeful discrimination. (See *Hernandez* v. *New York, supra,* 500 U.S. __ [114 L.Ed.2d 395].)

■ We acknowledge that, "[u]nder the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction." (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) " 'Decisions of the United States Supreme Court are binding . . . on state courts when a federal question is involved . . . .' [Citation.]" (*Elliott* v. *Albright* (1989) 209 Cal.App.3d 1028, 1034 [257 Cal.Rptr. 762].) "[W]e are [also]

bound by [decisions of] the California Supreme Court . . . [citation], unless the United States Supreme Court has decided the question differently. [Citation.]" (*People* v. *Greenwood* (1986) 182 Cal.App.3d 729, 734 [227 Cal.Rptr. 539], revd. on other grounds in *California* v. *Greenwood* (1988) 486 U.S. 35 [100 L.Ed.2d 30, 108 S.Ct. 1625].)

■ However, "[i]t is axiomatic . . . that a decision does not stand for a proposition not considered by the court." (*People* v. *Harris* (1989) 47 Cal.3d 1047, 1071 [255 Cal.Rptr. 352, 767 P.2d 619], citing *People* v. *Myers* (1987) 43 Cal.3d 250, 265, fn. 5 [233 Cal.Rptr. 264, 729 P.2d 698]; *Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) "[I]t is only the ratio decidendi of a Supreme Court opinion that is fully binding as a precedent on the lower courts of this state. [Citations.]" (*Bunch* v. *Coachella Valley Water Dist.* (1989) 214 Cal.App.3d 203, 212 [262 Cal.Rptr. 513].) "The ratio decidendi is the principle or rule which constitutes the ground of the decision, and it is this principle or rule which has the effect of a precedent. It is therefore necessary to read the language of an opinion in light of its facts and the issues raised, to determine . . . which statements of law are necessary to the decision, and therefore binding precedents . . . ." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, p. 753, quoted in *Bunch* v. *Coachella Valley Water Dist.*, *supra*, 214 Cal.App.3d at p. 212; *Santa Monica Hospital Medical Center* v. *Superior Court* (1988) 203 Cal.App.3d 1026, 1033 [250 Cal.Rptr. 384].) " 'It is the general rule that the language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts.' [Citations.]" (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 734-735 [257 Cal.Rptr. 708, 771 P.2d 406], quoted in *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1157 [278 Cal.Rptr. 614, 805 P.2d 873].)

■ *Batson*, *Wheeler* and their progeny considered only issues relating to peremptory challenges to *jurors* and those decisions developed procedures for resolving claims of exclusion of *jurors* on account of group bias. Those decisions did not deal with the application of *Batson/Wheeler* procedures to a determination of the good faith of peremptory challenges to *judges*. "Because [*Batson*, *Wheeler*, et al.] d[o] not stand for a proposition neither discussed nor analyzed [citation], [they] ha[ve] no precedential value on the issue before us." (*DCM Partners* v. *Smith* (1991) 228 Cal.App.3d 729, 739 [278 Cal.Rptr. 778], fn. omitted.)

Moreover, we reject the assertion that section 170.6 peremptory challenges are subject to scrutiny by "compelling analogy" to the standards enunciated in *Batson*, *Wheeler* and their progeny. (Cf. *County of Santa Clara*

v. *Superior Court* (1992) 2 Cal.App.4th 1686, 1691, fn. 3 [5 Cal.Rptr.2d 7].) A section 170.6 challenge is not analogous to a peremptory challenge to a prospective juror. Jurors must be drawn from " 'a representative cross-section of the community.' " (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 266, fn. omitted.) Conversely, eligibility to preside as trial judge in a superior court is substantially limited to those otherwise qualified individuals who have been elected or appointed to the office of superior court judge (see Cal. Const., art. VI, §§ 15, 16; see also Cal. Const., art. VI, § 21). In a capital case, the prosecution and the defendant are each entitled to 20 peremptory challenges to jurors. (Code Civ. Proc., § 231, subd. (a).) Section 170.6 limits a party to one peremptory challenge to a judge. A peremptory challenge to a prospective juror may be exercised without specification of any reason for the challenge. (See *People* v. *Wheeler, supra,* 22 Cal.3d at p. 273; see also *Edmonson* v. *Leesville Concrete Co.* (1991) 500 U.S. ___, ___ [114 L.Ed.2d 660, 111 S.Ct. 2077], dis. opn. of O'Connor, J. ["It is the nature of a peremptory that its exercise is left wholly within the discretion of the litigant."].) By contrast, "[C]haracterization of section 170.6 as 'the peremptory challenge procedure' [is] merely a convenient, abbreviated—though imprecise—way of distinguishing section 170.6 from section 170, the procedure for disqualifying judges for cause. . . ." (*Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 204, fn. 23.) A section 170.6 challenge must be accompanied by an affidavit or declaration stating that the judge is prejudiced against a party or attorney or the interests of the party or attorney so that the party or attorney cannot or believes that he or she cannot have a fair and impartial trial before the judge. As we have previously stated, "[t]he oath or verification requirement in section 170.6 is more than a 'hollow formality'; it is an essential part of the statutory scheme of safeguards bearing upon the constitutionality of the disqualification statute." (*People* v. *St. Andrew, supra,* 101 Cal.App.3d at p. 456, citing *Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 197.) The Supreme Court has stated that it cannot properly assume that there will be wholesale making of false statements under oath. (*Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 197, quoting *Johnson* v. *Superior Court, supra,* 50 Cal.2d at p. 697.)

Far from compelling, the analogy between peremptory challenges to prospective jurors and to judges is attenuated, so much so that the appropriateness of the analysis and procedures in *Batson* and *Wheeler* to section 170.6 peremptory challenges is hardly self-evident. (Cf. *Austin* v. *Lambert, supra,* 11 Cal.2d at pp. 79-80; *Daigh* v. *Shaffer, supra,* 23 Cal.App.2d at p. 453.) On the other hand, we are unable to accept the People's position that *Solberg* and *Johnson* are decisive of the issues before us so that a section 170.6 challenge to a judge on the basis of group bias is merely among the abuses of the statute which are to be "view[ed] . . . as a relatively inconsequential price to be paid for the efficient and discreet procedure in section

170.6." (*Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 204; see also *Johnson* v. *Superior Court, supra,* 50 Cal.2d at p. 697.)

Courts have long recognized that "[a]buse by some attorneys of the privilege of 'automatic' disqualification of judges has undoubtedly been frequent." (*Mayr* v. *Superior Court, supra,* 228 Cal.App.2d at p. 64.) In affirming the constitutionality of section 170.6, the Supreme Court has "catalogued" several alleged abuses of the statute. Among these are invoking the statute for the purpose of "judge-shopping"; disqualifying a judge for his view on the law or on the exercise of judicial discretion; utilizing the statute to obtain unwarranted delay in judicial proceedings; removing a judge regularly presiding in a department in order to obtain substitution of a less experienced judge; and employing the statute to intimidate judges and influence the outcome of judicial election campaigns. (*Solberg* v. *Superior Court, supra,* 19 Cal.3d at pp. 194-195.)

Notwithstanding its recognition of these abuses, the Supreme Court rejected challenges to the validity of section 170.6, explaining "that some of the abuses . . . are self-limiting. For example, a lawyer who practices in a single-judge court must realize that an improper use of section 170.6 in one or more cases risks antagonizing the very judge before whom he must inevitably appear in all other cases he has [or] will have in that court. It is true that an individual litigant may not share his concern, but the lawyer's self-interest should give him ample incentive to dissuade his client from demanding an unjustified disqualification. In a multi-judge court this risk is attenuated but not negligible; and in both settings it is compounded by the real possibility that the substitute judge who enters the case may be even less satisfactory to the lawyer or his client than the judge whom they disqualify. In that event there is no escape from the dilemma short of undertaking that often difficult task of attempting to prove actual bias under [Code of Civil Procedure] section 170—because subdivision (3) of section 170.6 declares that 'under no circumstances' can a party or his attorney make more than one motion pursuant thereto in each case. [¶] The latter provision . . . is one of several statutory safeguards . . . characterized . . . as 'designed to minimize such abuses.' [Citation.] The others are [citation] that the section 'requires that the party or his attor ney sho w good faith by declaring under oath that the judge is prejudiced, and provides for timely making of the challenge before trial, for strictly limited granting of continuances, and for reassignment as promptly as possible.' " (*Id.* at pp. 196-197, quoting *Johnson* v. *Superior Court, supra,* 50 Cal.2d at p. 697.)

The Supreme Court concluded, "to the extent that abuses persist in the utilization of section 170.6 they do not . . . 'substantially impair' or 'practically defeat' the exercise of the constitutional jurisdiction of the trial

courts. Rather, it may be helpful to view them as a relatively inconsequential price to be paid for the efficient and discreet procedure provided in section 170.6. The statute thus remains a reasonable—and hence valid—accommodation of the competing interests of bench, bar, and public on the subject of judicial disqualification. . . ." (*Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 204.)

The People would have us include peremptory challenges on the basis of group bias within the "catalogue" of abuses of section 170.6 which, in furtherance of the purposes of the statute, must be endured without opportunity for inquiry into the good faith of the peremptory challenge. However, neither *Solberg* nor any other decision has addressed the vulnerability of a section 170.6 challenge generally to federal constitutional challenge, or specifically to the Fourteenth Amendment claim tendered by respondent superior court, defendant and amicus curiae. As we have pointed out, "the positive authority of [*Solberg, Johnson* and their progeny] is coextensive only with [the] facts [presented by those cases.]" (*Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 1004 [275 Cal.Rptr. 201, 800 P.2d 557].) We must therefore determine as a matter of first impression whether the state, by enacting a statute affording a party one "no questions asked" peremptory challenge to a judge (see *California Fed. Sav. & Loan Assn.* v. *Superior Court, supra,* 189 Cal.App.3d at p. 271), can preclude inquiry into the possibility that such a challenge has been exercised for group bias.

■    "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." (*Cleburne* v. *Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439 [87 L.Ed.2d 313, 105 S.Ct. 3249], citing *Plyler* v. *Doe* (1982) 457 U.S. 202, 216 [72 L.Ed.2d 786, 102 S.Ct. 2382].) "A core purpose of the Fourteenth Amendment was to do away with all governmentally imposed discrimination based on race." (*Palmore* v. *Sidoti* (1984) 466 U.S. 429, 432 [80 L.Ed.2d 421, 104 S.Ct. 1879], citing *Strauder* v. *West Virginia* (1880) 100 U.S. 303 [25 L.Ed. 664], fn. omitted.) "The Fourteenth Amendment's mandate that race discrimination be eliminated from all official acts and proceedings of the State is most compelling in the judicial system." (*Powers* v. *Ohio* (1991) 499 U.S. __, __ [113 L.Ed.2d 411, 428, 111 S.Ct. 1364], citing *Rose* v. *Mitchell* (1979) 443 U.S. 545, 555 [61 L.Ed.2d 739, 749, 99 S.Ct. 2993].) "To permit racial exclusion in this official forum compounds the racial insult inherent in judging a citizen by the color of his or her skin." (*Edmonson* v. *Leesville Concrete Co., supra,* 500 U.S. __, __ [114 L.Ed.2d at pp. 678-679].) "[Racial] discrimination within the courtroom raises serious questions as to the fairness of the proceedings

conducted there." (*Id.* at p. __ [114 L.Ed.2d at p. 678].) Hence, "[d]iscrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice." (*Rose* v. *Mitchell, supra,* 443 U.S. at p. 555 [61 L.Ed.2d at p. 749].) In furtherance of these fundamental principles, the nation's highest court has held that prosecutorial discretion cannot be exercised on the basis of race (*Wayte* v. *United States* (1985) 470 U.S. 598 [84 L.Ed.2d 547, 105 S.Ct. 1524]) and that no party in either civil or criminal proceedings may use peremptory challenges to exclude prospective jurors on account of their race (*Georgia* v. *McCollum* (1992) __ U.S. __ [120 L.Ed.2d 33, 112 S.Ct. 2348]; *Edmonson* v. *Leesville Concrete Co., supra,* 500 U.S. __ [114 L.Ed.2d 660]; *Batson* v. *Kentucky, supra,* 476 U.S. 79 [90 L.Ed.2d 69]).

We conclude that these principles are applicable to race-based challenges to judges. Or, to paraphrase the United States Supreme Court, "a State's purposeful or deliberate denial . . . on account of race of participation as [a judge] in the administration of justice violates the Equal Protection Clause." (*Swain* v. *Alabama* (1964) 380 U.S. 202, 203 [13 L.Ed.2d 759, 763, 85 S.Ct. 824], citing *Ex parte Commonwealth of Virginia* (1880) 100 U.S. 339 [25 L.Ed. 676]; *Gibson* v. *Mississippi* (1896) 162 U.S. 565 [40 L.Ed. 1075, 16 S.Ct. 904].) Section 170.6 cannot be employed to disqualify a judge on account of the judge's race. A fortiori, section 170.6 cannot be implemented in such a way as to preclude inquiry into whether the statute has been employed to disqualify a judge on account of race. However, that is not to say that inquiry into the good faith of a section 170.6 peremptory challenge is mandated whenever the opposing party nakedly asserts that a challenge to a judge was race-based.

"Equal protection claims can be divided into three broad categories. . . . The first and most common type is a claim that a statute discriminates on its face. . . . [¶] The second type of equal protection claim is that neutral application of a facially neutral statute has a [racially] disparate impact. . . . [¶] The third type of claim is that [state officers] are unequally administering a facially neutral statute. . . ." (*E & T Realty* v. *Strickland* (11th Cir. 1987) 830 F.2d 1107, 1112, fn. 5, cert. den. (1988) 485 U.S. 961 [99 L.Ed.2d 425, 108 S.Ct. 1224].)

It is not contended that section 170.6 is discriminatory on its face or that its neutral application has a racially disparate impact. The equal protection claim tendered here is essentially that the statute cannot be utilized by a party to disqualify a judge on the ground of group bias.

"Court[s] ha[ve] found a denial of equal protection where procedures implementing a neutral statute operate[] to exclude persons . . . on racial grounds . . . ." (*Batson* v. *Kentucky, supra,* 476 U.S. 79, 86 [90 L.Ed.2d at

p. 82], fn. omitted.) However, " '[t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection *unless there is shown to be present in it an element of intentional or purposeful discrimination.*' " (*Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 297 [124 Cal.Rptr. 204, 540 P.2d 44], quoting *Snowden* v. *Hughes* (1944) 321 U.S. 1, 8 [88 L.Ed. 497, 503, 64 S.Ct. 397], italics original.) Just as in cases of peremptory challenges to prospective jurors, any party charging that his adversary has used a section 170.6 challenge in a manner violating equal protection bears the burden of proving purposeful discrimination. (See *Hernandez* v. *New York, supra,* 500 U.S. at p __ [114 L.Ed.2d at p. 405].)

To resolve the claim of purposeful discrimination tendered here, we adopt "the prima facie burden of proof rules" enunciated in decisions dealing with equal protection claims in other contexts. ■ Thus a party charging that an adversary has invoked a section 170.6 challenge solely on the ground of group bias bears an initial burden of establishing a prima facie case of invidious discrimination; if a prima facie case is established, the adversary then assumes the burden of demonstrating that the peremptory challenge was not predicated on group bias alone; if the adversary offers a race-neutral basis for the peremptory challenge, the trial court determines whether or not the charging party, here the defendant, has established purposeful discrimination. (Cf., e.g., *Hernandez* v. *New York, supra,* 500 U.S. __ [114 L.Ed.2d 395] [racial discrimination in selection of petit jury]; *Batson* v. *Kentucky, supra,* 476 U.S. 79 [90 L.Ed.2d 69] [racial discrimination in selection of petit jury]; *Castaneda* v. *Partida* (1977) 430 U.S. 482 [51 L.Ed.2d 498, 97 S.Ct. 1272] [racial discrimination in selection of a jury venire]; *McDonnell Douglas Corp.* v. *Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817] [racial discrimination in employment]; *People* v. *Wheeler, supra,* 22 Cal.3d 258 [racial discrimination in selection of a petit jury]; *Mixon* v. *Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306 [237 Cal.Rptr. 884] [racial discrimination in employment].)[2]

In order to prevail, defendant must establish a prima facie case first by showing that the prosecutor exercised a peremptory challenge to remove a

[2]Given the purposes of section 170.6, it may be appropriate to require a higher standard than a prima facie showing before permitting inquiry into the good faith of a peremptory challenge. However, we need not so decide in this case. The prosecutor has already been compelled to justify his exercise of the challenge. Additionally, for the reasons set forth *post,* we find that defendant did not establish even a prima facie case under "the prima facie burden of proof rules," nor has he met the burden of proving purposeful discrimination in the exercise of the peremptory challenge. These conclusions compel vacating the order disallowing the peremptory challenge to Judge Long, obviating any need to consider the appropriateness of a threshold standard higher than prima facie.

judge who is a member of a cognizable racial group, and then by showing facts and any other relevant circumstances which raise an inference that the prosecutor excluded the judge on account of his race. (*U.S.* v. *Rodriguez* (11th Cir. 1991) 935 F.2d 194, 195-196 [cert. den. __ U.S. __ (116 L.Ed.2d 811, 112 S.Ct. 911)], quoting *Batson* v. *Kentucky, supra*, 476 U.S. 79 [90 L.Ed.2d at pp. 87-88], citing *Powers* v. *Ohio, supra*, 499 U.S. __ [113 L.Ed.2d 411].) As articulated by the California Supreme Court: "To establish a prima facie case, the . . . party should first make as complete a record as possible; second, the . . . party must establish that the perso[n] excluded [is a] membe[r] of a cognizable group; and third, the . . . party must show a strong likelihood that the perso[n is] being excluded because of group association. [Citations.]" (*People* v. *Fuentes, supra*, 54 Cal.3d at p. 714.)

■ As in cases of peremptory challenges to prospective jurors, normally we would afford "considerable deference" to a trial court's finding of a prima facie case because trial judges " 'are in a good position to make such determinations . . . on the basis of their knowledge of local conditions and of local prosecutors.' [Citations.] They are also well situated to bring to bear on this question their powers of observation, their understanding of trial techniques, and their broad judicial experience. . . .' [Citations.]" (*People* v. *Sanders* (1990) 51 Cal.3d 471, 501 [273 Cal.Rptr. 537, 797 P.2d 561].)

■ The record establishes that Judge Long is Black, and thus the first prong of a prima facie case was established. (See *People* v. *Motton* (1985) 39 Cal.3d 596, 605 [217 Cal.Rptr. 416, 704 P.2d 176] ["That Blacks generally comprise a cognizable group is settled. (Citation.)"].) However, in finding a prima facie case of invidious discrimination, Judge Ford relied, in his words, "solely" on "the Wheeler [m]otion in this matter heretofore granted against [the prosecutor] in this particular case[.]" No party proffered any more "complete" record. Judge Ford did not preside at the proceedings on the *Wheeler* motion and he did not review a transcript of those proceedings. There were no circumstances before Judge Ford other than the unelaborated fact that a *Wheeler* motion had been granted in prior proceedings involving the same prosecutor. Moreover, the prosecutor is a Placer County Deputy District Attorney and there is no indication of similarity between local conditions and practices in Placer Superior Court and respondent Sacramento Superior Court. Hence, Judge Ford was no better situated than are we to evaluate the attempt prima facie to show purposeful racial discrimination. For that reason we will not defer to Judge Ford's finding that defendant made a prima facie showing of purposeful discrimination based as it is on the fact the prosecutor peremptorily challenged a Black judge after another judge had granted a *Wheeler* motion against the same prosecutor for excluding prospective jurors who, as we shall see, may or may not be members of the same cognizable group as Judge Long.

Having established that Judge Long was a member of a cognizable group, defendant was obliged to make as complete a record as possible and to establish a strong likelihood that Judge Long was challenged because he was Black. (See, e.g., *People* v. *Fuentes, supra,* 54 Cal.3d at p. 714.) Defendant's effort began and ended with the mere reference to the granting of a *Wheeler* motion on the ground that the prosecutor excluded prospective jurors because they were Black women. We reject the premise implied in the respondent court's finding of a prima facie showing that a party against whom a *Wheeler* motion is granted, without more, demonstrates a "strong likelihood" by a subsequent section 170.6 challenge to a judge of the same cognizable group that the challenge is based on group bias. Perhaps such an inference could be drawn from the particular circumstances surrounding the granting of the *Wheeler* motion or from circumstances arising during other proceeding. Here, however, Judge Ford did not preside at these other proceedings nor did he even review a transcript of other proceedings. Judge Ford relied solely on the fact that the prior *Wheeler* motion had been granted. Defendant did not offer the record of jury voir dire in that proceeding or of the *Wheeler* hearing or of any other proceedings.[3] On this skeletal record, we must conclude that defendant failed to establish the requisite prima facie case of purposeful discrimination.

Moreover, the *Wheeler* motion was granted upon a finding of exclusion of prospective jurors because they were Black women. Black women constitute a cognizable group (*People* v. *Motton, supra,* 39 Cal.3d at pp. 605-606), but Judge Long is not a member of that group. We recognize that "the systematic exclusion of Black women would inevitably result in disproportionate underrepresentation of Black persons generally" (*id.* at p. 606, fn. 2), and that Judge Long is Black. Still, the lack of complete identity of the two cognizable groups weakens any inference of group-based exclusion of Judge Long. For all the record shows, in prior jury selection the prosecutor may have declined the opportunity to exercise peremptory challenges to Black men.

---

[3]Contrary to defendant's representations, Judge Ford declined to consider resistance to a motion to change venue to be indicative of invidious discrimination and defendant expressly forwent any reliance on that factor. Furthermore, a "pattern of discrimination" cannot be established by reliance on the fact that Judge Long was the only Black judge sitting in the trial department of respondent superior court. "Since [this] contention[ ] was [not] presented in the trial court, and the declaratio[n] and other exhibi[t] filed in support of [it] were not before the superior court, we cannot consider them in this proceeding." (*Fall River Joint Unified School Dist.* v. *Superior Court* (1988) 206 Cal.App.3d 431, 437 [253 Cal.Rptr. 587], citing *Mission Imports, Inc.* v. *Superior Court* (1982) 31 Cal.3d 921, 927, fn. 5 [184 Cal.Rptr. 296, 647 P.2d 1075]; *Winton* v. *Municipal Court* (1975) 48 Cal.App.3d 228, 237 [121 Cal.Rptr. 561]; *Mosby* v. *Superior Court* (1974) 43 Cal.App.3d 219, 228 [117 Cal.Rptr. 588]; accord *Shipp* v. *Superior Court* (1992) 5 Cal.App.4th 147, 152-153, fn. 5 [6 Cal.Rptr.2d 685].) There is nothing in the record to indicate that the prosecutor was cognizant of the fact that he might be excluding the only Black judge available to try the case.

Since defendant failed to establish a prima facie case, Judge Ford had no authority to compel the prosecutor to assume the burden of demonstrating that the section 170.6 challenge was not predicated on group bias alone. In the absence of a prima facie case of race-based exclusion, Judge Ford "was bound to accept [the section 170.6 peremptory challenge] without further inquiry." (E.g., *McCartney* v. *Commission on Judicial Qualification, supra,* 12 Cal.3d at p. 532.)

However, since the prosecutor nevertheless was required to defend his exercise of the peremptory challenge, we proceed to examine the justifications proffered by the prosecutor. ■■■ " 'Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court had ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot.' " (*People* v. *Fuentes, supra,* 54 Cal.3d at p. 717, quoting *Hernandez* v. *New York, supra,* 500 U.S. at p. __ [114 L.Ed.2d at p. 405].)

"In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. ■■■ A court addressing this issue must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.' [Citations.] ' "Discriminatory purpose" . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part "because of," not merely "in spite of" its adverse effects upon an identifiable group.' [Citations.] [¶] ■■■ A neutral explanation in the context of [this] analysis . . . means an explanation based on something other than the race of the [judge]. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." (*Hernandez* v. *New York, supra,* 500 U.S. at p. __ [114 L.Ed.2d at pp. 405-406].)

Here, the prosecutor stated that he exercised the peremptory challenge because some years ago he prosecuted perhaps two cases in which Judge Long, then an attorney, represented defendants who ultimately pleaded guilty, and, as a result of those encounters, he formulated an opinion as to Judge Long's abilities as a lawyer and to practice criminal law. In the prosecutor's opinion, Judge Long would not have been a good judge at that time in that he could not be fair and impartial to the People. Notwithstanding

Judge Long's ascent to the bench and recent discussions about Judge Long with other prosecutors, the prosecutor remained of the opinion that the People could not obtain a fair trial before Judge Long and that it might not be "feasible" to obtain proper instructions and proper rulings on evidentiary matters.

■ The prosecutor's apprehension that Judge Long might be prejudiced against the People and his doubts about Judge Long's competence are race-neutral bases for exercise of the section 170.6 peremptory challenge.[4] "The trial court then [had] the duty to determine if the defendant has established purposeful discrimination." (*Batson* v. *Kentucky*, *supra*, 476 U.S. 79, 97 [90 L.Ed.2d at pp. 88-89], quoted in *Hernandez* v. *New York*, *supra*, 500 U.S. at p. __ [114 L.Ed.2d at p. 408].) " '[A]n invidious discriminatory purpose may . . . be inferred from the totality of the relevant facts . . . .' " (*Hernandez* v. *New York*, *supra*, 500 U.S. at p. __ [114 L.Ed.2d at p. 408], quoting *Washington* v. *Davis* (1976) 426 U.S. 229, 242 [48 L.Ed.2d 597, 608-609, 96 S.Ct. 2040].) Rather than engage in that determination, Judge Ford found that the prosecutor had failed to state sufficient "articulable facts" to overcome the prima facie showing and he therefore disallowed the peremptory challenge to Judge Long.

We recognize that we should ordinarily accord "great deference" to the trial court's decision on the ultimate question of discriminatory intent, (*Hernandez* v. *New York*, *supra*, 500 U.S. at p. __ [114 L.Ed.2d at pp. 408-409]), but here Judge Ford appears to have relieved defendant of the ultimate "burden of proving purposeful discrimination." (See *id.* at pp. __, __ [114 L.Ed.2d at pp. 405, 408], citing *Batson* v. *Kentucky*, *supra*, 476 U.S. 97-99 [90 L.Ed.2d at pp. 88-89].) First, as discussed *ante*, defendant did not make a prima facie case and presented nothing to rebut the prosecutor's proffered race-neutral bases for exercise of the peremptory challenge. Second, Judge Ford appears to have concluded that, once a prima facie case is established, the prosecutor bears the ultimate burden of demonstrating that he did not engage in purposeful discrimination. Third, Judge Ford does not appear to have examined the "totality of the relevant facts," but to have made a determination that the prosecutor's proffered explanation for exercise of the peremptory challenge was not sufficiently detailed to rebut the prima facie case. Under these circumstances, we decline to defer to Judge Ford, and we conclude that defendant failed to meet his burden of establishing purposeful discrimination.

---

[4]Since the record affords no basis to comment on the validity of the reasons given for the challenge, we express no opinion thereon. In any event, the validity or not of the prosecutor's reasons is not pertinent to the disposition of this proceeding. In the absence of invidious discrimination, a peremptory challenge will not be vitiated even if the challenge otherwise constitutes an abuse of the statute. (cf. *Solberg* v. *Superior Court*, *supra*, 19 Cal.3d at pp. 203-204.)

Defendant relied solely on the facts that Judge Long was Black and that a *Wheeler* motion had been granted on the ground the prosecutor had excluded prospective jurors because they were Black women. In response to the charge of invidious discrimination, the prosecutor explained that he exercised the section 170.6 peremptory challenge because, based on personal experience, albeit years earlier, he was of the opinion that Judge Long might be biased against the People and because he had doubts about Judge Long's competence. Judge Ford rejected that explanation on the ground that it lacked sufficient "particularity." We generally concur with the proposition that "the trial court is in the best position to determine whether a given explanation is genuine or sham" (*People* v. *Fuentes, supra,* 54 Cal.3d at p. 720), but any demand for greater detail must be tempered by recognition of the understandable reluctance of attorneys publicly to disparage judges. Unlike prospective jurors, attorneys will likely encounter the same judges again and again in the practice of their profession. (See *Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 196.) It is an understatement to say that judges have vastly more power over an attorney's pursuit of his livelihood than prospective jurors who have virtually none. Moreover, even if a *Wheeler* motion is granted, the venire is dismissed and the attorney who engaged in disciminatory cond uct will not likely have to deal again with those jurors. But even a successful peremptory challenge to a judge results in his recusal in only that one case. And if the challenge is dissallowed the judge is not excused as are the prospective jurors following a successful *Wheeler* motion; he remains as the judge presiding in that case, fully aware of the reasons given by counsel in support of an unsuccessful challenge. These realities exact too high a cost to justify a demand for even greater particularity than provided here in counsel's statement of reasons for challenge.

As discussed *ante,* defendant failed to establish a prima facie showing that the prosecutor exercised the peremptory challenge on the basis of race; accordingly the respondent court exceeded its authority in requiring the prosecutor to state his reasons for exercising the peremptory challenge. As we have indicated, although erroneously required to do so, the prosecutor proffered race neutral explanations for his challenge to Judge Long. Far from being so inadequate as to supply defendant with the prima facie case he could not muster on his own, much less to carry defendant's burden of establishing purposeful discrimination, the prosecutor's proffered reasons constitute sufficient grounds for the exercise of the challenge.

Upon examination of the entire record and the totality of the relevant facts, we conclude that defendant did not meet his burden of establishing that the prosecutor exercised the section 170.6 challenge because Judge Long is Black, and therefore, the challenge should not have been disallowed.

Having complied with the procedural requirements delineated in *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893], we are authorized to issue a peremptory writ in the first instance.

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order setting aside the peremptory challenge to the Honorable James L. Long, and to enter an order disqualifying Judge Long from presiding in any proceedings in People of the State of California v. Kenneth Derrell Williams, Sacramento County Superior Court No. 96535. Upon finality of this decision, the previously issued stay is vacated.

Sims, J., and Nicholson, J., concurred.

Petitions for a rehearing were denied August 28, 1992, and the petition of real party in interest for review by the Supreme Court was denied November 12, 1992. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.