Opinion
O’LEARY, P. J.
Nearly 40 years ago, our Supreme Court reaffirmed “that Code of Civil Procedure section 170.6, which provides for the disqualification of trial judges on motion supported by an affidavit of prejudice, does not violate the doctrine of the separation of powers or impair the independence of the judiciary.”[1] (Solberg v. Superior Court (1977) 19 Cal.3d 182, 186-187 [137 Cal.Rptr. 460, 561 P.2d 1148] (Solberg).) It did so after considering “experience with the statute [in the preceding] decades and as applied ... in a criminal context.” (Id. at p. 187.) The Solberg court reasoned, “to the extent that abuses persist in the utilization of section 170.6 they do not, in our judgment, ‘substantially impair’ or ‘practically defeat’ the exercise of the constitutional jurisdiction of the trial courts. Rather, it may be helpful to view them as a relatively inconsequential price to be paid for the efficient and discreet procedure provided in section 170.6. The statute thus remains a reasonable—and hence valid—accommodation of the competing interests of bench, bar, and public on the subject of judicial disqualification. We do not doubt that should future adjustments to this sensitive balance become necessary or desirable, the Legislature will act with due regard for the rights of all concerned.” (Solberg, supra, 19 Cal.3d at p. 204.)
*896 Although we question the wisdom of the Solberg holding in light of the complexities of modern court administration, we are bound to follow Supreme Court authority. For reasons we explain anon, we urge the Supreme Court to revisit the issue of blanket “papering” to determine whether the impact of an abusive use of Code of Civil Procedure section 170.6, such as demonstrated in this record, can be viewed as inconsequenhal on a trial court in the performance of its duty to administer jushce.
No fundamental adjustments to this balance have been made by either the Legislature or the Supreme Court in the ensuing 39 years. Respondent Superior Court of Orange County (respondent court), however, refused to grant a section 170.6 motion hied on behalf of petitioner, the People of the State of California, because the Orange County District Attorney (district attorney) invoked an improper blanket challenge to a particular judge that substantially disrupted the respondent court’s operations. As interpreted by respondent court, Solberg did not foreclose a separation of powers challenge to the executive branch’s apparent abuse of sechon 170.6 under the circumstances of this case.
In our view, however, Solberg anticipated circumstances very similar to those faced here. Rightly or wrongly, the Solberg court concluded the peremptory challenge at issue would not constitute a separation of powers violation. Because we are bound by the reasoning in Solberg, we must grant the petition for writ of mandate.
PROCEDURAL HISTORY
In December 2014, real party in interest Rito Tejeda was charged with murder. (Pen. Code, § 187, subd. (a).) On December 3, 2015, respondent court assigned Tejeda’s case to Judge Thomas Goethals for ah purposes and set the matter for a pretrial hearing in Judge Goethal’s courtroom. That same day, petitioner moved to disqualify Judge Goethals pursuant to section 170.6. The motion was supported by a declaration executed under penalty of perjury by an attorney with the district attorney’s office. The declaration represented that Judge Goethals “is prejudiced against the party or the party’s attorney, or the interest of the party or party’s attorney, such that the declarant cannot, or believes that he/she cannot, have a fair and impartial trial or hearing before the judicial officer.”
Later that day, respondent court denied the motion to disqualify Judge Goethals, “without prejudice to the People’s or the defendant’s right to seek reconsideration of this order, should they choose to do so.” Nohce of entry of the order was served by mail.
*897 On December 17, 2015, petitioner sought writ relief from this court. (§ 170.3, subd. (d).) This court issued an order to show cause on February 11, 2016, and subsequently set the matter for oral argument.
FACTUAL RECORD DEVELOPED BY RESPONDENT COURT
The factual record in this matter is unusual. Petitioner did not submit evidence (other than the standard form § 170.6 declaration) with its motion. Tejeda did not oppose the motion, with evidence or otherwise. Instead, respondent court took judicial notice of facts and events outside the scope of this particular case in supporting its conclusions (1) the district attorney’s office was engaged in improper “ ‘blanket papering’ ” of Judge Goethals in murder cases, and (2) the effect of the blanket challenge was to “substantially disrupt[] the orderly administration of criminal justice in Orange County.” We summarize the lengthy recitation of facts from respondent court’s order.
Judge Goethals practiced criminal law for more than 20 years, both as a member of the district attorney’s office and as a private attorney representing criminal defendants. Since his appointment to the bench in 2003, Judge Goethals has presided over exclusively criminal matters, including “long cause cases” (the most complicated murder cases). “Judge Goethals has prosecuted capital cases, defended capital cases, and . . . presided over capital cases
In January 2012, Judge Goethals was assigned the long cause case of People v. Dekraai (Super. Ct. Orange County, 2012, No. 12ZF0128). In January 2013, Judge Goethals granted a defense discovery request pertaining to an inmate informant to whom defendant Dekraai had allegedly made incriminating statements. After receiving discovery materials, the defense filed three motions in January and February 2014 (to dismiss the death penalty allegations, to disqualify the district attorney’s office based on an alleged conflict of interest, and to exclude from evidence any statements made by Dekraai to the informant). These motions were based on defense allegations that members of the district attorney’s office and law enforcement officers had engaged in misconduct (perjury, subornation of perjury, intentional violation of criminal defendants’ constitutional rights, and obstruction of justice) in connection with the use of informants. Judge Goethals refused the prosecution’s request to deny the motions without an evidentiary hearing.
Judge Goethals began hearing evidence on all three motions on March 18, 2014. On August 4, 2014, Judge Goethals made factual findings that (1) law enforcement officers intentionally moved informants at the jail in an attempt to obtain incriminating statements, and (2) prosecutors had committed negligent violations of Brady v. Maryland (1963) 373 U.S. 83 [10 L.Ed.2d 215, *898 83 S.Ct. 1194], Judge Goethals ruled that Dekraai’s statements should be excluded from evidence, but denied the other two motions.[2] However, after new evidence was presented by the defense pertaining to the existence of a computerized system for handling informants, Judge Goethals granted the motion to disqualify the district attorney’s office on March 12, 2015.
In the wake of these rulings, the district attorney’s use of peremptory challenges against Judge Goethals changed dramatically. The raw numbers are stark. “For over three years, from December 7, 2010 through February 24, 2014, Judge Goethals was assigned 35 murder cases for trial and was disqualified once by the People. From February 25, 2014 through September, 2015, a period of [18] months, Judge Goethals was assigned 49 murder cases for trial and was disqualified 46 times by the People.” (Italics omitted.) The pattern continued with this case and others assigned to Judge Goethals in December 2015.
Respondent court’s order then turned to the consequences of the district attorney’s repeated disqualification of Judge Goethals. “Six months after the People began disqualifying Judge Goethals, the negative impact became readily apparent: the four other long cause judges had significantly more murder cases than Judge Goethals. This raised concerns because . . . Penal Code section 1050 requires the judiciary to have courts available for trial at the earliest time possible. Furthermore, ... the purpose of having a long cause judge—one with a low-enough caseload to allow a seasoned judge to give sufficient time to a murder trial—was being defeated.”
Respondent court’s multiple efforts to reassign murder cases to Judge Goethals were all rebuffed by section 170.6 challenges from the district attorney’s office. “By April, 2015, [respondent court] was in a crisis. New murder cases were being added to its inventory, which included unresolved murder cases. In addition, a backlog of hundreds of other felony cases was becoming a significant problem. Short cause judges were unavailable to try the shorter felony cases because they were presiding over two-to-three-week murder trials. To solve this problem, long cause judges were assigned short cause cases, taking away the time necessary to be devoted to long cause murder cases.”
Assignments were shuffled between the various judicial officers at respondent court, in the hope that the blanket challenge phenomenon would be temporary. But it continued unabated through the autumn of 2015.
“[T]he effect of the People’s ‘blanket’ disqualification of Judge Goethals has caused murder cases and other felony cases to languish unnecessarily. It *899 has caused strain in misdemeanor operations. As a result, the court’s responsibility to ensure the orderly administration of justice has been severely impacted.”
The court observed that it could simply reassign Judge Goethals, but declined to do so: ‘“The very thought of this option is offensive. To allow a party to manipulate the court into removing a judge from hearing certain criminal cases—when that judge, in the performance of his judicial duties, has conducted a hearing which exposed that same party’s misconduct—not only goes against the very cornerstone of our society: the rule of law, but would be a concession against judicial independence.” (Italics omitted.)
DISCUSSION

Peremptory Challenges Under Section 170.6

‘“[S]ection 170.6 provides that no superior court judge shall try any civil or criminal action involving a contested issue of law or fact when it is established that the judge is prejudiced against any party or attorney appearing in the action.” (The Home Ins. Co. v. Superior Court (2005) 34 Cal.4th 1025, 1031 [22 Cal.Rptr.3d 885, 103 P.3d 283] (Home Ins. Co.); see § 170.6, subd. (a)(1).) Of course, ‘“actual prejudice is not a prerequisite to invoking the statute.” (Solberg, supra, 19 Cal.3d at p. 193.) Instead, section 170.6 allows for the disqualification of judges based upon the mere “ ‘belief of a litigant’ that he cannot have a fair trial before the assigned judge.” (Solberg, supra, 19 Cal.3d at p. 193; see § 170.6, subd. (a)(2).)
Peremptory challenges under section 170.6 ‘“are presented in the form of a motion, but they fall outside the usual law and motion procedural rules, and are not [in the typical case] subject to a judicial hearing.” (Frisk v. Superior Court (2011) 200 Cal.App.4th 402, 408 [132 Cal.Rptr.3d 602].) Within its circumscribed limits, section 170.6 authorizes parties (or their attorneys), rather than courts, to unilaterally decide whether a judge is ‘“prejudiced.” (Home Ins. Co., supra, 34 Cal.4th at p. 1032 [§ 170.6 permits party to obtain disqualification of judge for prejudice based solely upon sworn statement without having to establish prejudice as matter of fact to satisfaction of court].) Courts must honor procedurally sufficient, timely presented section 170.6 motions. (§ 170.6, subd. (a)(4) [“If the motion is duly presented, and the affidavit or declaration ... is duly filed . . . , thereupon and without any further act or proof, the judge supervising the master calendar . . . shall assign some other judge ... to try the cause or hear the matter”]; see Stephens v. Superior Court (2002) 96 Cal.App.4th 54, 59 [116 Cal.Rptr.2d 616].)
The atypical power conferred upon parties (and their attorneys) by section 170.6 is not “an unconstitutional delegation of legislative and judicial powers *900 to litigants and their attorneys”; nor is it ‘“an unwarranted interference with the powers of the courts.” (Johnson v. Superior Court (1958) 50 Cal.2d 693, 696 [329 P.2d 5] (Johnson) [affirming facial constitutionality of § 170.6, which applied only to civil cases at the time].)

Appellate Court Review of Order Denying Peremptory Challenge

“An order denying a peremptory challenge is not an appealable order and may be reviewed only by way of a petition for writ of mandate.” (Daniel V. v. Superior Court (2006) 139 Cal.App.4th 28, 39 [42 Cal.Rptr.3d 471]; see § 170.3, subd. (d).) Hence, there is no adequate remedy at law for rejected section 170.6 motions—filing a writ petition is “the exclusive means of appellate review of an unsuccessful peremptory challenge motion.” (People v. Hull (1991) 1 Cal.4th 266, 276 [2 Cal.Rptr.2d 526, 820 P.2d 1036]; see § 1086 [writ of mandate appropriate “where there is not a plain, speedy, and adequate remedy, in the ordinary course of law”].) Even assuming petitioner is required to establish irreparable harm in bringing this statutory writ petition,[3] such harm is obvious in the context of judicial disqualification. (§ 170.6, subd. (a)(1) [“A judge . . . shall not try a . . . criminal action ... of any kind . . . when it is established as provided in this section that the judge ... is prejudiced”].) As explained above, a party can disqualify a judge by executing a sworn statement indicating a belief that the party cannot have a fair trial before the assigned judge. Section 170.6 would ring hollow if the moving party were required to prove in a writ petition that the disqualification motion would actually make a difference in the outcome of the case (an inherently speculative enterprise) or that the moving party could not successfully move to disqualify the trial judge for cause under section 170.3 (a showing that would undermine § 170.6 by requiring the party to disclose the specific reason for believing the judge was not fair and impartial and to explain why evidence could not be marshaled to disqualify the judge for cause).
*901 It has often been stated that courts review an order denying a section 170.6 motion for an abuse of discretion. (E.g., Grant v. Superior Court (2001) 90 Cal.App.4th 518, 523 [108 Cal.Rptr.2d 825].) This standard of review has meaning in some cases, when there are factual questions that must be sorted out by trial courts before the motion can be granted or denied. For instance, section 170.6, subdivision (a)(4), limits “each side” of a case to one peremptory challenge. It may be unclear in some cases whether “joined parties (e.g., codefendants) are on the same side.” (Orion Communications, Inc. v. Superior Court (2014) 226 Cal.App.4th 152, 159 [171 Cal.Rptr.3d 596].)
But a trial court has no discretion to refrain from following binding Supreme Court authority. (See Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937]; People v. Franc (1990) 218 Cal.App.3d 588, 593 [267 Cal.Rptr. 109] [“Although stare decisis doctrine retains some flexibility, it permits only the California Supreme Court, not a lower court, to depart from Supreme Court precedent”].) As acknowledged in respondent court’s order, the paramount legal question in this case is the reach of Solberg, supra, 19 Cal.3d 182: “As a decision of the state’s highest court, the holding in Solberg must be followed by all inferior California courts. [Citations.] [¶] But is Solberg’s holding so broad that it requires all trial courts to grant all timely blanket challenges regardless of the circumstances?” Our review is de novo with regard to the question of whether Solberg precludes an inquiry by respondent court into the district attorney’s use of section 170.6.
In our view, petitioner is entitled to writ relief because Solberg cannot be “fairly distinguished” (Trope v. Katz (1995) 11 Cal.4th 274, 287 [45 Cal.Rptr.2d 241, 902 P.2d 259]) from the factual scenario presented here. Under these circumstances, we conclude Solberg precluded respondent court from assessing the motivations and weighing the consequences of the district attorney’s peremptory challenges as a basis for denying a section 170.6 motion on separation of powers grounds.

Solberg—Factual and Procedural Context

The factual and procedural context of Solberg, supra, 19 Cal.3d 182, is complicated, with a technical wrinkle that potentially bears on its authoritative power. In four prostitution matters, the deputy district attorney exercised his section 170.6 right to disqualify the assigned municipal court judge prior to hearings scheduled to entertain dismissal motions. The municipal court judge declined to disqualify herself. (Solberg, supra, 19 Cal.3d at pp. 187-188.) At superior court writ proceedings initiated by the district attorney, counsel for the municipal court offered to prove that the disqualification motions “were ‘blanket challenges’ motivated by prosecutorial discontent with [the municipal court judge’s] prior rulings of law.” (Id. at p. 188.) *902 The superior court judge “denied the offer as immaterial” and “quashed subpoenas issued against the district attorney and his staff for the purpose of eliciting such proof.” (Ibid.) The superior court judge issued writ relief compelling disqualification of the municipal court judge. This judgment was appealed and the California Supreme Court later granted review. (Id. at pp. 188-189.)
Before the superior court judge issued his writ of mandate, two of the four real parties in interest (i.e., the defendants accused of prostitution) filed section 170.6 motions to disqualify the superior court judge. (Solberg, supra, 19 Cal.3d at p. 188.) The superior court judge denied the motions on two grounds: (1) he was acting as an appellate judge in the matter at issue and (2) the challenges were filed by real parties in interest (not true parties). (Id. at p. 189.) Real parties filed a writ petition with the Court of Appeal to challenge the superior court judge’s denial of their section 170.6 motions; “that proceeding [was brought before the Supreme Court] on an alternative writ issued by the Court of Appeal.” (Solberg, supra, 19 Cal.3d at p. 189.)
Thus, the Solberg court had before it two distinct but related matters—the judgment (a writ of mandate compelling the disqualification of the municipal court judge), and a writ proceeding (seeking a writ of mandate compelling the disqualification of the superior court judge). The Solberg opinion disposed of both disputes.
As to the writ proceeding, the Supreme Court rejected the superior court judge’s grounds for refusing to honor section 170.6 motions filed by real parties. (Solberg, supra, 19 Cal.3d at pp. 189-190.) “A writ of mandate will therefore lie to compel [the superior court judge] to vacate his order denying the motion for disqualification. [¶] All orders made thereafter by [the superior court judge] in these proceedings are likewise void, including the judgment directing issuance of a peremptory writ commanding [the municipal court judge] to disqualify herself in the criminal matters.” (Id. at p. 190.) The last paragraph of the opinion ordered with regard to the writ proceeding: “[L]et a peremptory writ of mandate issue as prayed.” (Id. at p. 204.)
Having determined the superior court judge’s orders were void, including the writ of mandate compelling the disqualification of the municipal court judge, the Solberg court was not obligated to review the merits of the judgment. Indeed, the disposition of the appeal in the last paragraph of the opinion was the following: “the appeal is dismissed." (Solberg, supra, 19 Cal.3d at p. 204, italics added.) There was no need to affirm or reverse the *903 judgment; there was no longer any judgment to review. The opinion could have ended on its fifth page.[4]
Instead, the majority opinion continued for 14 additional pages, composed of an in-depth review of the constitutionality of section 170.6. The court explained, “the issues presented by the appeal from that judgment will doubtless arise on remand, and we therefore proceed to address their merits.” (Solberg, supra, 19 Cal.3d at p. 190.)
It is the 14 pages of, strictly speaking, unnecessary analysis that pertains to the separation of powers issue raised in this case. Is this portion of Solberg composed solely of dicta? Can it be deemed a holding, despite the fact that it was not necessary to the disposition of the appeal?
“ ‘Only statements necessary to the decision are binding precedents . . . .’ [Citation.] ‘The doctrine of precedent, or stare decisis, extends only to the ratio decidendi of a decision, not to supplementary or explanatory comments which might be included in an opinion.’ ” (Gogri v. Jack in the Box Inc. (2008) 166 Cal.App.4th 255, 272 [82 Cal.Rptr.3d 629] [declining to follow dicta of California Supreme Court].) Of course, “it is often difficult to draw hard lines between holdings and dicta.” (United Steelworkers of America v. Board of Education (1984) 162 Cal.App.3d 823, 834 [209 Cal.Rptr. 16] (United Steelworkers).) In United Steelworkers, the appellate court treated a prior Supreme Court’s “broad answers to the questions raised by all parties” for guidance “on remand” as a holding. (Ibid.) Similarly, in Solberg the court intended to instruct the lower court on remand and provided a full account of its reasoning in providing those instructions.
Moreover, “ ‘[e]ven if properly characterized as dictum, statements of the Supreme Court should be considered persuasive. [Citation.]’ [Citation.]” (Hubbard v. Superior Court (1997) 66 Cal.App.4th 1163, 1169 [78 Cal.Rptr.2d 819].) “When the Supreme Court has conducted a thorough analysis of the issues and such analysis reflects compelling logic, its dictum should be followed.” (Hubbard v. Superior Court, supra, at p. 1169.)
*904 In sum and on balance, we are bound by Solberg in our examination of the separation of powers issue presented. Even if rightly considered dicta, the 14 pages of analysis included in Solberg on the separation of powers issue cannot simply be discarded by an inferior court. We need not decide whether the unusual procedural features of Solberg would affect our Supreme Court’s application of stare decisis principles should it choose to review the instant case.

Solberg’s Separation of Powers Analysis

As presented to the Supreme Court, the Solberg appellants’ principal contention was “that section 170.6 is unconstitutional because it violates the doctrine of separation of powers [citation] and impairs the independence of the judiciary [citation].” By not requiring any reasons for disqualification to be stated, “the statute in effect delegates ... the judicial power to determine whether [a ground for disqualification] exists in the particular case in which it is invoked.” (Solberg, supra, 19 Cal.3d at pp. 190-191.)
Solberg rejected appellants’ contentions, reaffirming the continuing vitality and applicability to criminal cases of Johnson, supra, 50 Cal.2d 693, which held 19 years earlier that section 170.6 was constitutional. Point by point, Solberg rejected critiques of section 170.6 and Johnson. (Solberg, supra, 19 Cal.3d at pp. 191-193.) After stating actual prejudice is not required to invoke section 170.6, Solberg characterized section 170.6 as “ ‘an extraordinary right to disqualify a judge.’ ” (Solberg, supra, 19 Cal.3d at p. 193.) Much of the initial analysis discussed asserted abuses of section 170.6 that had only become known after Johnson, e.g., judge-shopping (including to avoid a judge whose legal views are not helpful to one’s case), use for tactical advantage (including to delay a case, particularly in single-judge courtrooms or single-judge specialty courts), and false swearing of affidavits. (Solberg, supra, 19 Cal.3d at pp. 194-200.)
The appeal was not limited to generalities. It was contended “that the case at bar [was] an example of’ the abuses engaged in by counsel. The municipal court judge had “dismissed a number of prostitution cases after ruling that the defendants therein were the victims of discriminatory law enforcement practices based on the suspect classification of sex because in each instance only the female prostitute, and not her male customer, was arrested and prosecuted. . . . [Prostitution charges against the individual real parties in interest herein came before [the municipal court judge] for the purpose of setting a date to hear their motions to dismiss on the same ground. The People moved to disqualify her under section 170.6 allegedly because of a perceived inability to have a fair trial ‘in cases of these kinds in this court’ [citation]. Appellants assert that the circumstances and wording of the motion *905 show it was primarily based on the People’s dissatisfaction with [the municipal court judge’s] prior legal ruling on discriminatory law enforcement.” (Solberg, supra, 19 Cal.3d at p. 194, fn. 11.)
The Solberg court assumed the charges of abuses were true. It did ‘“not condone such practices, nor [did it] underestimate their effect on the operation of our trial courts.” (Solberg, supra, 19 Cal.3d at p. 195.) But the existence of abuses did not result in the court’s declaring section 170.6 to be unconstitutional, either in general or as applied to the specific case before it. (Solberg, supra, 19 Cal.3d at pp. 192-200.)
In addressing the appellants’ challenge to the statute, the court did not indicate whether it viewed the challenge to be a ‘“facial” or an “as applied” challenge. Reviewing the discussion, we conclude the court considered it as both. Reliance on Johnson, supra, 50 Cal.2d 693, suggests a facial challenge analysis. The court also recognized the significant delay in a single-judge court and the inevitable delay in even a multi-judge court that will result from the filing of an affidavit. (Solberg, supra, 19 Cal.3d at p. 195.) It acknowledged that in multi-branch courts, a disqualification may also result in a desired change in the place as well as the date of trial and “in courts with specialized departments—such as a psychiatric or juvenile department—the statute has been used to remove the judge regularly sitting in that department in the hope of benefiting from the substitution of a less experienced judge.” (Ibid.) And lastly, the court recognized the statute could be “invoked to intimidate judges generally and in certain cases even to influence the outcome of judicial election campaigns [citation].” (Ibid.) After consideration of these various potential abuses, the court concluded it would not hold the statute invalid as applied. (Ibid.)
Most pertinent to the petition before us is Solberg’s analysis of the contention that Johnson was distinguishable because it was a civil case. “The argument is that in all criminal actions the plaintiff and its attorney remain the same, i.e., the People of the State of California represented by the district attorney; the defendant is different in each case, but in most instances is represented by the same counsel, the public defender. This uniformity of either party or counsel assertedly permits the ‘institutionalization’ of many of the abuses discussed herein, and in particular the abuse known as the ‘blanket challenge.’ The practice occurs when as a matter of office policy a district attorney or a public defender instructs his deputies to disqualify a certain disfavored judge in all criminal cases of a particular nature ... or in all criminal cases to which he is assigned. The former policy will prevent the judge from hearing any cases of that type, while the latter policy will force his removal from the criminal bench and his reassignment to a civil department.” (Solberg, supra, 19 Cal.3d at pp. 201-202, fn. omitted.)
*906 Solberg flatly rejected the notion that the concerns particular to criminal law made any difference. ‘“[Tjhis contention is different not in kind but only in degree from the arguments rejected in Johnson, and ... the difference does not warrant a contrary result.” (Solberg, supra, 19 Cal.3d at p. 202.) ‘“[T]he possibility of the filing of ‘blanket challenges’ does not distinguish the present criminal proceeding from Johnson, and the reasoning of that decision is equally applicable to the current version of the statute, governing both civil and criminal cases.” (Id. at p. 204.)
Solberg rested its analysis regarding blanket challenges on two supports. First, it recalled the “self-limiting aspects of abuse of section 170.6”—i.e., both the technical limits in the statute itself (only one challenge is available to a party and it must be used in a timely fashion) and the offsetting practical concerns of district attorneys (not antagonizing the bench and not delaying the administration of justice and the real possibility the substitute judge who entered the case may be even less satisfactory to the lawyer or his client than the judge whom they disqualify). (Solberg, supra, 19 Cal.3d at p. 202.) Second, Solberg described its prior analysis of blanket challenges in a judicial misconduct opinion (McCartney v. Commission on Judicial Qualifications (1974) 12 Cal.3d 512 [116 Cal.Rptr. 260, 526 P.2d 268] (McCartney), overruled on other grounds in Spruance v. Commission on Judicial Qualifications (1975) 13 Cal.3d 778, 799 & fn. 18 [119 Cal.Rptr. 841, 532 P.2d 1209]). In McCartney, the court was critical of blanket challenges but did not indicate that such an abuse “vitiates” section 170.6. (Solberg, supra, 19 Cal.3d at p. 203.)[5]
In a footnote, Solberg specifically addressed the prospect of a blanket challenge forcing a court to remove a judge from a criminal assignment. Solberg held that even “this radical consequence” is still distinguishable from cases outside the section 170.6 context in which separation of powers violations were found. (Solberg, supra, 19 Cal.3d at p. 202, fn. 22.) “The effect of [section 170.6] is at most to remove the individual judge assigned to *907 the case or the department, but not to deprive the court of the power to hear such cases by assignment of another judge.” (Solberg, supra, 19 Cal.3d at p. 202, fn. 22.)
Nothing in Solberg indicates that its analysis was limited to circumstances in which only four challenges were at issue (or that if the Solberg appellants had proven that the municipal court judge had been excluded 50 times and that this undermined court operations, such a showing would have been sufficient). Indeed, nothing in Solberg leaves room for the consideration of evidence or a different result if the evidence is substantial enough.
Instead, Solberg rejected the separation of powers challenge, concluding that abuses committed under the authority of the statute were an “inconsequential price to be paid for the efficient and discreet procedure provided in section 170.6.” (Solberg, supra, 19 Cal.3d at p. 204.) Solberg also denied a motion to appoint a referee to take evidence concerning abuses of section 170.6; such evidence “is not material to the disposition” of the appeal because the court assumed the abuses it described were true. These abuses did not render the statute “invalid as applied.” (Solberg, supra, 19 Cal.3d at p. 195 & fn. 12.) Solberg implicitly, if not explicitly, suggests that courts should not conduct evidentiary hearings (or otherwise marshal evidence on their own, as happened here) to determine the extent of the abuses committed by parties utilizing section 170.6 challenges. Instead, courts should grin and bear this “reasonable—and hence valid—accommodation of the competing interests of bench, bar, and public on the subject of judicial disqualification.” (Solberg, supra, 19 Cal.3d at p. 204.) Any adjustments to this balance should be made by the Legislature. (Ibid.)
Solberg is binding authority. Solberg anticipated the circumstances presented here, and its reasoning, as described above, prevents respondent court or this court from entertaining the argument the district attorney’s use of peremptory challenges resulted in a separation of powers violation. A writ of mandate must issue compelling respondent court to vacate its order and to assign this case to a different judge.
The Supreme Court Should Revisit Solberg
After considering “experience with the statute [in the preceding] decades and as applied ... in a criminal context” (Solberg, supra, 19 Cal.3d at p. 187), the Solberg court determined the statute did not “ ‘substantially impair’ or ‘practically defeat’ the exercise of the constitutional jurisdiction of the trial courts.” (Id. at p. 204.) But the court acknowledged future adjustments to this sensitive balance of the competing interests of bench, bar, and public on the subject of judicial disqualification may become necessary or desirable. (Ibid.)
*908 Circumstances within our justice system have changed dramatically in the nearly four decades since Solberg was decided. Public safety and the constitutional rights of the accused remain primary concerns as courts grapple with increased caseloads, a steady stream of statutory changes, and reduced funding. Examples of statutory changes that have had major impacts on court operations include the Safe Neighborhoods and Schools Act of 2014, the California Criminal Realignment Act of 2011, and the Gang Violence and Juvenile Crime Prevention Act of 1998.
Solberg may be “good law,” in the sense that it is a binding case that has not been abrogated or reversed, but we question its efficacy in the context of the current reality of the justice system.[6] Broadly speaking, Solberg leaves no room to remedy extraordinary abuses like those apparently perpetrated in the instant case. The holding in Solberg (i.e., the exercise of a peremptory challenge under § 170.6 never results in a separation of powers violation, regardless of the extent of the abuse) arguably conflicts with the direction of its separation of powers jurisprudence. (See Steen v. Appellate Division of Superior Court (2014) 59 Cal.4th 1045, 1053 [175 Cal.Rptr.3d 760, 331 P.3d 136] [one branch may not “defeat or materially impair the inherent functions of another”]; Carillo and Chou, California Constitutional Law: Separation of Powers (2011) 45 U.S.F. L.Rev. 655, 678-681 [California Supreme Court generally approaches separation of powers issues by determining if a core power has been materially impaired].) We posit that the judiciary’s core power “ ‘to control its order of business’ ” and safeguard “ ‘the rights of all suitors’ ” (Lorraine v. McComb (1934) 220 Cal. 753, 756 [32 P.2d 960]) can be materially impaired if a blanket challenge goes too far.
Case law from another type of constitutional claim shows that the provisions of section 170.6 are not absolute. A section 170.6 challenge made on the basis of the judge’s race is subject to an equal protection claim. (See People v. Superior Court (Williams) (1992) 8 Cal.App.4th 688 [10 Cal.Rptr.2d 873] (Williams).)
In Williams, supra, 8 Cal.App.4th at page 695, a criminal defendant alleged that the prosecutor had exercised a peremptory challenge against the (black male) judge based on group bias against blacks. The Williams trial judge denied the section 170.6 challenge. (Williams, supra, 8 Cal.App.4th at p. 695.) The appellate court issued writ relief requiring the disqualification of *909 the trial judge because the petitioner complied with the “procedural requisites.” (Id. at pp. 698-699 [“peremptory challenge was thus timely and in proper form, and recusal of [judge] was mandatory”].) But in doing so, Williams expressed the view that “[s]ection 170.6 cannot be employed to disqualify a judge on account of the judge’s race. A fortiori, section 170.6 cannot be implemented in such a way as to preclude inquiry into whether the statute has been employed to disqualify a judge on account of race.” (Williams, supra, 8 Cal.App.4th at p. 707.) Section 170.6 challenges based on group bias, a violation of the equal protection clause of the United States Constitution, cannot reasonably be grouped in among the abuses deemed to be mere nuisances in Solberg, supra, 19 Cal.3d 182. (Williams, supra, 8 Cal.App.4th at pp. 706-707.) “[A]ny party charging that his adversary has used a section 170.6 challenge in a manner violating equal protection bears the burden of proving purposeful discrimination. [Citation.]” (Williams, supra, 8 Cal.App.4th at p. 708.) A prima facie showing of purposeful discrimination was not made in Williams. (Id. at p. 711.)
If the procedural approach offered by Williams, or something similar, were to be adopted in separation of powers cases, only a prima facie showing of improper blanket challenges by a governmental entity would result in the governmental entity’s being required to justify its use of section 170.6. Respondent court’s order reflects that approach to some extent, by offering petitioner the opportunity to present evidence at a hearing in which respondent court would reconsider its denial of the section 170.6 motion. Other states similarly have declined to make peremptory challenge rights absolute when blanket papering becomes a threat to judicial independence. (See State v. City Court of City of Tucson (1986) 150 Ariz. 99 [722 P.2d 267]; People ex rel. Baricevic v. Wharton (1990) 136 Ill.2d 423 [144 Ill.Dec. 786, 556 N.E.2d 253]; State v. Erickson (Minn. 1999) 589 N.W.2d 481.)
In addition to the rigid rule it laid down, we also find fault with the specific analysis of the Solberg court pertaining to blanket challenges. First, the Solberg court was convinced that “the self-limiting aspects of abuse of section 170.6” would come into play before a blanket challenge became a dire threat to the operation of courts. (Solberg, supra, 19 Cal.3d at p. 202.) But the experience of this case disproves the Supreme Court’s deductive logic. For whatever reason, the district attorney appears to be unconcerned with blow-back from the blizzard of affidavits filed by the People.
Second, the reasoning employed in Solberg is offensive to the judiciary. Solberg suggests that “unwarranted ‘blanket challenges’ . . . may well . . . antagonize the remaining judges of the court. . . .” (Solberg, supra, 19 Cal.3d at p. 202.) This line of thought implies judges will violate their ethical duties, including the duty to “perform the duties of judicial office impartially.” (Cal. *910 Code Jud. Ethics, canon 3.) It seems absurd to justify absolute deference to a statute presuming the good faith of attorneys in filing section 170.6 motions by assuming judges will react in bad faith to overuse of the statute.
Third, as to blanket challenges, Solberg can fairly be characterized as double dictum. As explained above in this opinion, the entire 14 pages of separation of powers analysis in Solberg is arguably dicta. Within the section of the opinion dealing specifically with blanket challenges, Solberg placed great stock in the prior analysis of section 170.6 in a judicial ethics opinion, McCartney, supra, 12 Cal.3d 512, not an opinion procedurally situated to assess a separation of powers challenge to the use of a blanket challenge. (Solberg, supra, 19 Cal.3d at p. 202 [deeming its discussion of McCartney to be the “more important[]” of its two lines of argument].) As noted by respondent court in this case, “the broad pronouncement in McCartney, on which Solberg relied, is, at best, dictum.”
In sum, we agree with the dissenting view of Justice Tobriner: “the use of ‘blanket’ challenges under section 170.6 to disqualify a judge because of his judicial philosophy or his prior rulings on questions of law seriously undermines the principle of judicial independence and distorts the appearance, if not the reality, of judicial impartiality. . . . [We] do not believe that the judiciary [should be] helpless to prevent such an abuse of the section 170.6 disqualification procedure, particularly in a case—such as the present one—in which the improper basis of the disqualification motion clearly appears on the face of the record.” (Solberg, supra, 19 Cal.3d at p. 205 (dis. opn. of Tobriner, J.).)
As described by respondent court, the disruption to the operations of that court is not an “ ‘inconsequential price to be paid for the efficient and discreet procedure provided in section 170.6.’ ” Years of budget cuts to the California trial courts have taken their toll on all court operations. The chaos that has resulted from the abuse of section 170.6 affidavits is all the more troubling because of the judicial branch’s current funding reality. Like all trial courts, the Orange County Superior Court struggles to perform its constitutional and statutorily mandated functions. As courts work to keep doors open and to provide timely and meaningful access to justice to the public, the extraordinary abuse of section 170.6 is a barrier to justice and its cost to a court should be reconsidered. Like at least one court before us (Autoland, Inc. v. Superior Court (1988) 205 Cal.App.3d 857, 861-862 [252 Cal.Rptr. 662]), we call on our Supreme Court to reexamine Solberg.
DISPOSITION
Let a peremptory writ of mandate issue directing respondent court (1) to vacate its order denying petitioner’s section 170.6 motion and (2) to issue a *911 new and different order assigning this case to a judge other than Judge Goethals. The order to show cause is discharged.
Aronson, J., concurred.

 All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

 In two other cases. Judge Goethals found Brady violations and disqualified one specific deputy district attorney by rulings announced in February and March 2014.

 “Some courts may be more inclined to grant a statutory writ without requiring a factual showing of ‘inadequate legal remedy’ and ‘irreparable harm’ [citation] ... on the theory the Legislature has in effect determined these questions in the petitioner’s favor by authorizing the writ relief. But this approach is not uniformly adopted. Other courts require the petitioner to affirmatively establish these two prerequisites in all cases, notwithstanding statutory authority for the writ.” (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 15:87, p. 15-46.) Published cases holding that courts have wrongly denied section 170.6 motions do not include an explicit analysis of whether the petitioners in those cases would be irreparably harmed by a failure to provide relief. (See, e.g., Manuel C. v. Superior Court (2010) 181 Cal.App.4th 382 [104 Cal.Rptr.3d 787]; First Federal Bank of California v. Superior Court (2006) 143 Cal.App.4th 310 [49 Cal.Rptr.3d 296]; Pandazos v. Superior Court (1997) 60 Cal.App.4th 324 [70 Cal.Rptr.2d 669].) This suggests that irreparable harm is either presumed or considered to be unnecessary in section 170.6 writ petitions.

 A contrary argument made by the district attorney at oral argument is that the remainder of the opinion was necessary to the court’s decision to issue the writ commanding the superior court judge to recuse himself. Before indicating a writ would issue, the court stated: “No question is raised as to either the timeliness or the formal sufficiency of the affidavit of disqualification filed by the real parties in interest; and as hereinafter appears, we have concluded that the statute is constitutional.” (Solberg, supra, 19 Cal.3d at p. 190, italics added.) But nothing in the Solberg opinion suggests that the constitutionality of section 170.6 was before it in the writ proceeding. And the court’s explanation of why it decided to address the merits of the appeal—because “the issues presented . . . will doubtless arise on remand” (ibid.)—was unnecessary if the constitutional analysis was necessary to the decision on the writ.

 McCartney observed in a footnote: “The blanket nature of these filings ... in itself reflects a measure of impropriety. As the objective of a verification is to insure good faith in the averments of a party [citation], the provision in . . . section 170.6 for the showing of prejudice by affidavit requires a good faith belief in the judge’s prejudice on the paid of the individual party or counsel filing the affidavit in each particular case. [Citations.] The ‘blanket’ nature of the written directive issued by the public defender arguably contravened this requirement of good faith by withdrawing from each deputy the individual decision whether or not to appeal' before [a particular' judge]. To phrase it another way, the office policy predetermined that prejudice would be claimed by each deputy without regal'd to the facts in each case handled by the office, thereby transforming the representations in each affidavit into bad faith claims of prejudice.” (McCartney, supra. 12 Cal.3d at p. 538, fn. 13.) But in the text of the opinion, McCartney observed, “the Legislature clearly foresaw that the peremptory challenge procedure would be open to such abuses but intended that the affidavits be honored notwithstanding misuse.” (Id. at p. 538.)

 We confine our analysis in this section to the question of whether Solberg overreached in its separation of powers analysis with regard to the specific problem of blanket challenges in criminal law cases. We do not take issue with the facial constitutionality of section 170.6 or the desirability in general of section 170.6 as a matter of policy. (Cf. Burg, Meeting the Challenge: Rethinking Judicial Disqualification (1981) 69 Cal. L.Rev. 1445 [advancing thesis that peremptory challenges are an undesirable solution to problems of judicial disqualification].)